CENTER FOR DISABILITY ACCESS
Raymond Ballister Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Amanda Seabock, Esq., SBN 289900
Zachary Best, Esq., SBN 166035
Mail: 8033 Linda Vista Road, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
amandas@potterhandy.com
   Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Orlando Garcia,**<br><br>  Plaintiff,<br><br>v.<br><br>**PCH Beach Resort, LLC**, a Delaware Limited Liability Company;<br><br>  Defendants, | **Case No.** 8:21-cv-00081-DOC-JDE<br><br>**First Amended Complaint For Damages And Injunctive Relief For Violations Of:** Americans With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Orlando Garcia complains of PCH BEACH RESORT, LLC, a Delaware Limited Liability Company and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is substantially limited in his ability to walk. He suffers from cerebral palsy. He has the use of only one arm. He uses a wheelchair, walker, or cane for mobility.

2. Defendant of PCH Beach Resort, LLC, owns and operates the Hyatt

Regency Huntington Beach Resort and Spa located at 21500 Pacific Coast Hwy, Huntington Beach, California currently and at all times relevant to this complaint.

3. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION:**

4. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

5. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

6. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**PRELIMINARY STATEMENT**

7. This is a lawsuit challenging the reservation policies and practices of a

place of lodging. Plaintiff does not know if any physical or architectural barriers exist at the hotel and, therefore, is not claiming that that the hotel has violated any construction-related accessibility standard. Instead, this is about the lack of information provided on the hotel's reservation website that would permit plaintiff to determine if there are rooms that would work for him.

8. After decades of research and findings, Congress found that there was a "serious and pervasive social problem" in America: the "discriminatory effects" of communication barriers to persons with disability. The data was clear and embarrassing. Persons with disabilities were unable to "fully participate in all aspects of society," occupying "an inferior status in our society," often for no other reason than businesses, including hotels and motels, failed to provide information to disabled travelers. Thus, Congress decided "to invoke the sweep of congressional authority" and issue a "national mandate for the elimination of discrimination against individuals with disabilities," and to finally ensure that persons with disabilities have "equality of opportunity, full participation, independent living" and self-sufficiency.

9. As part of that effort, Congress passed detailed and comprehensive regulations about the design of hotels and motels. But, as importantly, Congress recognized that the physical accessibility of a hotel or motel means little if the 61 million adults living in America with disabilities are unable to determine which hotels/motels are accessible and to reserve them. Thus, there is a legal mandate to provide a certain level of information to disabled travelers.

10. But despite the rules and regulations regarding reservation procedures, a 2019 industry article noted that: "the hospitality sector has largely overlooked the importance of promoting accessible features to travelers."

11. These issues are of paramount important. Persons with severe disabilities have modified their own residences to accommodate their unique

needs and to ameliorate their physical limitations. But persons with disabilities are never more vulnerable than when leaving their own residences and having to travel and stay at unknown places of lodging. They must be able to ascertain whether those places work for them.

**FACTUAL ALLEGATIONS:**

12. Due to plaintiff's disability, he is unable to, or seriously challenged in his ability to, stand, ambulate, reach objects mounted at heights above his shoulders, transfer from his chair to other equipment, and maneuver around fixed objects.

13. Thus, Plaintiff needs an accessible guestroom and he needs to be given information about accessible features in hotel rooms so that he can confidently book those rooms and travel independently and safely.

14. Plaintiff originally planned on travelling to Huntington Beach in November of 2020. But he had tremendous difficulty in finding a hotel that provided enough information about accessibility features that would permit him to independently assess whether the rooms worked for him.

15. Plaintiff felt that the Hyatt Regency Huntington Beach Resort and Spa would work well for him due to its desirable location and price point.

16. Thus, on or about October 4, 2020, plaintiff went to the Hyatt Regency Huntington Beach Resort and Spa reservation website at https://www.hyatt.com/en-US/hotel/california/hyatt-regency-huntington-beach-resort-and-spa/hunrh?src=corp_lclb_gmb_seo_hunrh seeking to book an accessible room at the hotel.

17. This website reservation site was either maintained and operated by the defendant or was run by a third party on the defendant's behalf. It was the official online reservation system for this hotel.

18. Plaintiff found that there was insufficient data or details about the

accessible guestrooms to give him the ability to independently assess whether any of the guestrooms worked for him.

19. First, the hotel identified five mobility-accessible features. The hotel placed the following five items under a heading titled "Accessible Hotel Areas": "public entrance," "swimming pool," "registration desk," "public routes," and "guestrooms."

20. Second, the hotel had an heading titled "ADA" under which it listed four additional mobility-accessible features: "wide doors," "lowered thermostat and light switches," "lowered peephole and door latch," and "accessible bathroom."

21. There was no further mobility-accessible identification or information about any particular guestroom or other area of the hotel.

22. This meager information falls far short of what the ADA requires and does not even come close to meeting the ADA requirement that hotels must not only identify but "*describe* accessible features in the hotels and guest rooms offered through its reservations service *in enough detail* to reasonably permit individuals with disabilities to *assess independently* whether a *given* hotel or guest room meets *his or her* accessibility needs." 28 C.F.R. 36.302(e)(1)(ii) (emphasis added to key words).

23. The one word label "Accessible" is a naked conclusion or opinion and does not permit an independent assessment but requires a wheelchair user to hope that the hotel knows what it is talking about.

24. Plaintiff, like any wheelchair user, simply needs to know some basic information (actual data, not adjectives) about the core features so that he can independently assess whether the hotel room works for him. Those core features for the guestroom itself are simply:

      a. entrances;

      b. maneuvering space at bed;

   c. toilet;
   d. sink; and
   e. bath/shower.

That's it. Five critical areas in the guestroom. Plaintiff does not need an exhaustive list of accessibility features. Plaintiff does not need an accessibility survey to determine of a room works for him. Plaintiff, like the vast majority of wheelchair users, simply needs these handful of areas to be described in enough detail to permit him to independently assess that the room works for him and that he can book with confidence.

 25. The level of information that plaintiff needs to confidently book his hotel room is as follows.

- For the doors (into the room and into the bathroom), plaintiff simply needs to know if he can get in. This is a problem that has created tremendous problems for the plaintiff in the past. A simple statement that the hotel room entrance and interior doors provide at least 32 inches of clearance is enough to provide plaintiff this critical piece of information about whether he can fit his wheelchair. Here, the hotel says "wide" doors but gives no specific information, leaving guests in the dark about what this means.
- For the beds themselves, the only thing plaintiff needs to know (and the only thing regulated by the ADA Standards) is whether he can actually get to (and into) the bed, i.e., that there is at least 30 inches width on the side of the bed so his wheelchair can pull up next to the bed for transfer. This is critical information because plaintiff needs to pull his wheelchair alongside the bed. Here, the website says nothing.
- For the restroom toilet, plaintiff only needs to know two things that determine if he can transfer to and use the toilet; (1) that the toilet seat height is between 17-19 inches (as required by the ADA Standards) and

(2) that it has the two required grab bars to facilitate transfer. The website says nothing about grab bars at the toilet and no information about the height of the toilet. And this is critical. Plaintiff only has the use of one hand and transferring from wheelchair to toilet is difficult and dangerous for him. The website says nothing.

- For the restroom sink, the two things that will determine whether plaintiff can use the sink from his wheelchair: (1) can he safely get his knees under the toilet? To wit: does the sink provide the knee clearance (27 inches high, 30 inches wide, 17 inches deep) and is any plumbing under the sink wrapped with insulation to protect against burning contact? The second thing is whether the lavatory mirror is mounted at a height so that wheelchair users can sue it. A simple statement like: "the lavatory sink provides knee clearance of at least 30 inches wide, 27 inches tall and 17 inches deep, all of the under-sink plumbing is wrapped, and the lowest reflective edge of the mirror is no more than 40 inches high." Here, the website says nothing.

- For the bathtub, the plaintiff only needs to know a few things: (1) does it have a tub seat as required by the ADA; (2) does it have the required grab bars on the walls; (3) does it have a detachable handheld shower spray unit; and (4) are all the amenities within 48 inches height. Here, though, the website says nothing.

26. This small list of items are the bare necessities that plaintiff must know to make an independent assessment of whether the "accessible" hotel room works for him. These things comprise the basics of what information is reasonably necessary for plaintiff (or any wheelchair user) to assess independently whether a given hotel or guest room meets his or her accessibility needs.

27. Other accessibility requirements such as slopes of surfaces, whether the

hand-held shower wand has a non-positive shut off valve, the temperature regulator, the tensile strength and rotational design of grab bars, and so many more technical requirements under the ADA are beyond what is a *reasonable* level of detail and plaintiff does not expect or demand that such information is provided.

28. But because the defendant has failed to identify and describe—and/or failed to provide the necessary information to the third party operator of the website reservation system—the core accessibility features in enough detail to reasonably permit individuals with disabilities to *assess independently* whether a given hotel or guest room meets his accessibility needs, the defendant fails to comply with its ADA obligations and the result is that the plaintiff is unable to engage in an online booking of the hotel room with any confidence or knowledge about whether the room will actually work for him due to his disability.

29. This lack of information created difficulty for the plaintiff and the idea of trying to book this room -- essentially ignorant about its accessibility -- caused difficulty and discomfort for the Plaintiff and deterred him from booking a room at the Hyatt Regency Huntington Beach Resort and Spa.

30. Plaintiff lives about 40 miles from this hotel and, therefore, is in this geographical area on a constant and ongoing basis. Plaintiff frequents businesses to determine if they have complied with the anti-discrimination mandates of the ADA.

31. As a veteran ADA tester, Plaintiff is aware that he needs to return to the hotel website and to patronize the hotel in order to have standing to see that the hotel comes into compliance with the ADA's mandate regarding its reservation policies. Thus, plaintiff will use the hotel's website reservation system to book a room and travel to the Sonesta Los Angeles Airport LAX Hotel when it has been represented to him that the hotel's website reservation

system is accessible. Plaintiff will be discriminated against again, i.e., be denied his lawfully entitled access, unless and until the defendant is complies with the law.

32. Plaintiff would patronize this hotel but is deterred from doing so because of the lack of detailed information through the hotel's reservation system.

33. Plaintiff has reason and motivation to use the defendant's hotel reservation and to stay at the defendant's hotel in the future. Among his reasons and motivations are to assess these policies and facilities for compliance with the ADA and to see his lawsuit through to successful conclusion that will redound to the benefit of himself and all other similarly situated.

34. Plaintiff routinely revisits and uses the facilities and accommodations of places he has sued to confirm compliance and to enjoy standing to effectuate the relief promised by the ADA.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

35. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

36. Under the ADA, it is an act of discrimination to fail to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges advantages or accommodations to person with disabilities unless the entity can demonstrate that taking such steps would fundamentally alter the nature of those goods, services, facilities, privileges advantages or accommodations. See 42 U.S.C. §

12182(B)(2)(A)(ii).

37. Specifically, with respect to reservations by places of lodging, a defendant must ensure that its reservation system, including reservations made by "any means," including by third parties, shall:

    a. Ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

    b. Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs; and

    c. Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems.

*See* 28 C.F.R. § 36.302(e).

38. Here, the defendant failed to modify its reservation policies and procedures to ensure that it identified and described accessible features in the hotels and guest rooms in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs and failed to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

39. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

40. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f).

41. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, failing to comply with the ADA with respect to its reservation policies and practices.

42. Because the violation of the Unruh Civil Rights Act resulted in difficulty and discomfort for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. See Civ. Code § 52(a).

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 for each offense.

11

First Amended Complaint                                       8:21-cv-00081-DOC-JDE

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code § 52(a).

Dated: February 10, 2021          CENTER FOR DISABILITY ACCESS

                                           By: /s/ Russell Handy
                                           Russell Handy
                                           Attorney for Plaintiff